

**General Motors North America
Field Performance Assessment**

June 10, 2014

Paul V. Cassisa, Jr.
Butler Snow LLP
Suite 205
1200 Jefferson Avenue
Oxford, MS  38655

**Expert Report of Kathryn F. Anderson
Dean J. Lucas v. General Motors LLC**

Dear Mr. Cassisa:

This report contains my assessment of the performance of the restraint systems in the subject vehicle, occupant kinematics, and the biomechanics of injury associated with Mr. Dean J. Lucas.  Mr. Lucas was the driver of a 2008 GMC Sierra, 2500HD heavy duty, four-wheel-drive crew cab pick-up truck (VIN 1GTHK23688F165652), that was involved in an accident on October 21, 2011.

**QUALIFICATIONS**

I have a Bachelor of Science degree in Engineering from Purdue University.  The focus of my undergraduate studies was in biomedical engineering through the Interdisciplinary Engineering School at Purdue University.  I also have a Masters of Science degree in Biomedical Engineering (Biomechanics) from the University of Michigan.

I have been employed by General Motors since 1991, and am currently a Senior Staff Engineer in the Engineering Analysis group within our Global Vehicle Safety organization.  In the past, I have been responsible for the development of front and rear seat occupant protection systems and have conducted crash and sled tests to assess the performance of these systems.  I have also been responsible for the design release of driver air bags, passenger air bags, and steering wheels.  I have knowledge and experience in the development, testing, and design of the components that comprise a frontal impact restraint system.  I am also familiar with the design, development, and testing of the General Motors GMT900 truck product line and will testify about this if asked.




General Motors North America
Field Performance Assessment

I have also researched motorsports safety technology, various applications of specific occupant protection features, and the use of anthropomorphic test device measurement equipment. I participate in the Crash Injury Research and Engineering Network project through the University of Michigan Program for Injury Research and Education and have been an engineering fellow with the University of Michigan Program for Injury Research and Education (currently known as the International Center for Automotive Medicine (ICAM) at the University of Michigan Medical Center). In addition, I have participated in the USCAR Occupant Safety Research Partnership which included joint research activities with Ford Motor Company and DaimlerChrysler Corporation.

I have more than twenty-two years of experience in the design and development of automotive crash protection systems and occupant injury evaluation. My CV provides a more detailed description of my various current and past job responsibilities, and my publications.

**INFORMATION CONSIDERED**

I considered the information contained in the following documents in formulating my opinions about the mechanisms of the injuries sustained by Mr. Dean Lucas in the accident of October 21, 2011:

Petition for Damages;

First Supplemental and Amending Petition;

GM LLC's Initial Disclosures;

GM LLC's Supplemental Initial Disclosures;

Initial Disclosures on Behalf of Plaintiff, Dean J. Lucas;

State of Louisiana Uniform Motor Vehicle Traffic Crash Report of the subject incident;

Color copies of (19) photographs of the subject vehicle, taken October 25, 2011, and provided by Louisiana Farm Bureau Insurance;

Color copies of (18) photographs of the adverse vehicle, Nissan Sentra, taken October 25, 2011, and provided by Louisiana Farm Bureau Insurance;

Documents produced by Bize and Louisiana Farm Bureau;

Recorded conversation between Alicia Murray and Mr. Dean Lucas, October 25, 2011;

Recorded conversation between Bryan Morrow and Mr. Derrick Bize, October 28, 2011;



**GM** | General Motors North America
Field Performance Assessment

Cenla damage appraisals for the subject vehicle, dated October 28, 2011;

Cenla damage appraisals for the adverse vehicle, dated October 26, 2011;

Communications with Mr. John Sprague and Mr. Hamed Sadrnia;

Accident reconstruction of Mr. Hamed Sadrnia;

Inspection photographs of the accident scene taken by Hamed Sadrnia, March 20, 2014;

Inspection photographs of the subject vehicle taken by Tony Gennusa, April 17, 2013;

Photographs of Tech 2 Data obtained from the subject vehicle by Tony Gennusa, April 17, 2013;

CDR Report for the data obtained from the subject vehicle's SDM Module on April 17, 2013;

2007 GMT 911/912 HD Pick-up Frontal Sensing Performance Review report;

2007 GMT 911/912 Heavy Duty Final Report to the Performance Assessment Committee;

Occupant Performance Evaluation Consideration Book;

General Motors barrier crash test, sled test, and lab test documentation, photos, and videos;

GM VIS Information and vehicle invoice for the subject vehicle;

2008 GMT900 FMVSS 208, 209 and 210 Compliance Documents;

Engineering drawings, design information, and product assembly documents;

2008 GMC Sierra air bag sections of the service manual;

2008 GMC Sierra Owner's Manual;

Deposition Transcript of Dean J. Lucas, dated January 9, 2013;

Dean J. Lucas's medical records obtained to date.





**General Motors North America Field Performance Assessment**

**THE INCIDENT**

At approximately 10:45 pm on October 21, 2011, Mr. Dean J. Lucas was driving a 2008 GMC Sierra 2500HD heavy duty crew cab pick-up truck and was traveling northbound on LA 1 in Avoyelles, Louisiana. As reported in the State of Louisiana Traffic Crash Report, a 2008 Nissan Sentra, driven by Derrick Bize, turned left out of a car wash parking lot to attempt to go southbound on LA1 (ref. Figure 1 – Hamed Sadrnia scene photo #luca004hs).



Figure 1 – Hamed Sadrnia scene photo #luca004hs (LA 1, view traveling northbound)

Mr. Bize pulled out into the northbound path of Mr. Lucas, and the police diagram of the vehicles at the point of impact, show Bize's Sentra was impacted in the left rear quarter by the front left corner of Mr. Lucas's pick-up truck (ref. Figure 2 – State of Louisiana traffic crash report diagram).



**GM** General Motors North America
Field Performance Assessment



Figure 2 – State of Louisiana Traffic Crash Report diagram

**REPORTED INJURIES**

Mr. Dean Lucas, the driver of the GMC Sierra 2500HD pick-up, reported that he was injured as a result of this accident event. The police report indicates that Mr. Lucas was wearing his seat belt, was not injured, and was not transported to a medical facility. Mr. Bize, the driver of the Nissan Sentra, was also noted to be wearing his seat belt, and was also not injured or transported to a medical facility.

The subject crash occurred on October 21, 2011. Mr. Lucas did not report to a medical facility on the day of the crash, but visited the office of Dr. Darron McCann four days after the crash event, on October 25, 2011. Consultation notes indicate that he reported to have had a motor vehicle accident on October 21, 2011, was wearing his seat belt, his face hit the steering wheel, his head hit the windshield, there was a bullseye on the glass, he was initially dazed but not bad, had some pressure pain in his upper front teeth, and had head pain. He was noted to have a 2 cm knot on his forehead, and a 1 cm abrasion on his right upper lip.




General Motors North America
Field Performance Assessment

Eight days post-crash, on October 29, 2011, Mr. Lucas reported to Rapides Regional Medical Center with complaints of pain in his mouth, head, neck and back.  CT scans of his face, cervical spine and thoracic spine were conducted.  The results of those studies were as follows:

10/29/2011 CT Scan of Facial Bones – There was no evidence of acute fracture.  The orbits, nasal bones, zygomas, mandible, maxilla, medial and left pterygoids are intact.  The CT scan revealed evidence or pre-existing injury and post-surgical changes in the bilateral regions of the frontal skull and both maxillary regions, that were a result of a previous craniotomy.
10/29/2011 CT Scan of the Upper Thoracic Spine and Lower Cervical Spine – There was no evidence of acute fracture or dislocation, and no soft tissue abnormalities.  The CT scan of the upper thoracic and lower cervical spines was unremarkable.

Mr. Lucas was 40 years old and approximately 6'0" tall and 175 lbs at the time of the accident (from 10/29/2011 Rapides Regional Medical Center records).  Mr. Lucas's most clinically significant injuries that appear to be a result of the October 21, 2011 subject crash event, based on review of the documents above, are:

1)    Head contusion with a 2 cm knot on his head
2)    1 cm abrasion on his right upper lip
3)    Unspecified dental damage to crown on Tooth #8
4)    Cervical and thoracic strain

These reported injuries will be addressed in this report in order to more completely discuss the occupant kinematics during the October 21, 2011 accident event, as well as his extensive past medical history that includes prior accidents, surgeries, and complaints of neck and back pain.

**BASIS OF OPINIONS**

I reviewed the information listed above relative to the subject 2008 GMC Sierra 2500HD heavy duty crew cab pick-up truck that was involved in an accident on October 21, 2011, in Avoyelles, Louisiana.  My opinions are based on the information contained in the documents previously mentioned, and on my education, background and experience in automotive occupant protection research and development.  I reserve the right to amend my opinions expressed herein in the event that new information becomes available to me.

General Motors Corporation  •  GM Technical Center  •  Mail Code 480-111-E20  •  30200 Mound Rd.  •  Warren, MI 48090





General Motors North America
Field Performance Assessment

**ANALYSIS AND OPINIONS**

I have been informed that Plaintiffs failed to preserve the 2008 GMC Sierra 2500HD heavy duty crew cab pick-up truck at issue in this case ("subject vehicle") after the October 21, 2011, accident.  Therefore, GM did not inspect and document the damage to the subject vehicle in its immediate post-collision condition. I reviewed color copies of (19) photographs of the subject vehicle, and color copies of (18) photographs of the adverse vehicle, Nissan Sentra, taken October 25, 2011, and provided by Louisiana Farm Bureau Insurance.  I also reviewed (94) photographs of the accident scene taken by Hamed Sadrnia, March 20, 2014.  The most significant contact damage to the front of the subject vehicle was primarily concentrated to the lower left front corner of the 2500HD heavy duty crew cab pick-up truck, and involved the far left side of the front bumper and the left front wheel and suspension (ref. Figure 3 – Lower Left Corner of GMC Sierra (LFB Photos), and Figure 4 – Left Front Suspension of GMC Sierra (LFB Photos).  The truck had a brush guard mounted to the front of the vehicle.  The truck had also been modified, or "lifted," and equipped with high profile wheels and tires which created a higher ride height (ref. Figures 5 - Right Front of Subject GMC Sierra from Louisiana Farm Bureau (LFB) Photos.



Figure 3 – Lower Left Corner of GMC Sierra (LFB Photos)



Figure 4 –Left Front Suspension of GMC Sierra (LFB Photos)

General Motors Corporation  • GM Technical Center  • Mail Code 480-111-E20  •  30200 Mound Rd.  •  Warren, MI 48090



General Motors North America
Field Performance Assessment



Figure 5 - Right Front of Subject GMC Sierra from Louisiana Farm Bureau (LFB) Photos

A review of the photographs of the overall exterior damage of the subject vehicle, provided by Louisiana Farm Bureau, show the subject crash resulted in very narrow, localized side-swipe type damage to the front left side corner of the truck (scrapes on the lower bumper cover).  The truck's aftermarket high profile wheels and tires were mounted so they extended outside the body's fenders, so the left front wheel also showed evidence of contact damage (wheel was detached from the left front suspension in the LFB photos).  This damage is consistent with the description of the subject incident.  There was no apparent deformation of the front brush guard, front bumper system, grille, hood, or right front headlamp. Consistent with Mr. Hamed Sadrnia's reconstruction of the accident, it is also my opinion that the exterior damage to the front of the subject vehicle, GMC Sierra 2500HD pick-up, is not consistent with the type of frontal damage that would be induced by longitudinal loading of the front structure in a crash that would be above the frontal air bag deployment threshold.  The subject vehicle was not preserved in its immediate post-crash condition, so there were no exterior vehicle components, interior vehicle components, seat belts or sensing and diagnostic module (SDM) available for physical inspection.



**GM** | General Motors North America
Field Performance Assessment

Figure 6 shows the damage to the left rear area on the adverse vehicle, Nissan Sentra, where the front left corner of the GMC Sierra made contact.



Figure 6 – Left Rear of Adverse Nissan Sentra from Louisiana Farm Bureau (LFB) Photos

My review and analysis of the information pertaining to the October 21, 2011, incident indicates the subject vehicle did not experience a frontal or near frontal impact that was sufficient enough to warrant the deployment of the air bags. It is my understanding that Mr. Hamed Sadrnia estimated the change in velocity experienced by the subject vehicle as a result of the impact with the rear of the Nissan was approximately 2-10 mph. The narrow side-swipe type crash, involving an impact of the left wheel of the subject vehicle to the left rear side of the Nissan, did not generate a level of longitudinal deceleration significant enough to be detected as the beginning of a deployment level crash event. Based on a review of all of the available information contained in the documents listed above, it is evident that the October 21, 2011, impact to the subject vehicle, GMC Sierra 2500HD crew cab pick-up, would not have been the type of crash event where the frontal air bags would have been expected to deploy. The subject vehicle did not experience a large enough change in longitudinal velocity in a short enough period of time to warrant deployment of the frontal air bags for supplemental protection.



**General Motors North America**
**Field Performance Assessment**

Mr. Lucas's truck was a 2500HD heavy duty crew cab, four-wheel-drive pick-up with a Gross Vehicle Weight Rating (GVWR) of 9200 lbs (as indicated on the New Vehicle Invoice). His truck was manufactured on November 19, 2007 at the Moraine, Ohio assembly plant. Federal Motor Vehicle Safety Standard (FMVSS) No. 208, Occupant Crash Protection, as specified in part 571.208, 49 CFR Ch. V (8-31-06 Edition), requires by law that trucks, buses, and multipurpose passenger vehicles with a GVWR of 8,500 lbs. or less (Ref. S4.2.6.3), and certified to S14, shall meet the applicable frontal crash protection requirements of S5.1.2(b) by means of an inflatable restraint system at the driver's and right front passenger's position that requires no action by vehicle occupants. Even though, the GMT911 and GMT912 20-series and 30-series heavy duty pick-up trucks are rated at GVWs greater than 8500 lbs., and are not required by law to have frontal air bags, General Motors Corporation designed, developed, and installed frontal air bags at the driver's and right front passenger's positions as standard equipment in these heavy duty pick-ups (ref. 2007 GMT 911/912 Heavy Duty Final Report to the Performance Assessment Committee and the 2007 GMT 911/912 HD Pick-up Frontal Sensing Performance Review report). The frontal air bag system in the GMT900 heavy duty pick-ups was developed using the same considerations and priorities as the GMT900 light duty pick-ups and sport utility vehicles, but because the passive requirements of FMVSS 208 do not apply to the heavy duty pick-ups, General Motors Corporation's first priority in developing the heavy duty systems was to "implement restraint systems that do not inflict serious injury," or in other words, "do no harm" (ref. General Motors' Occupant Performance Evaluation Consideration Book).

The air bag is designed to provide supplemental protection in certain moderate to severe frontal or near frontal collisions. The seat belt functions to provide the primary restraint in frontal impacts of all severities. This is especially the case in lower speed impacts, like Mr. Lucas's crash event, where the air bag system is not designed to deploy. Documents provided by Louisiana Farm Bureau Insurance contain a recorded conversation between Mr. Lucas and Alicia Murray on October 25, 2011, four days after the subject crash. When questioned about whether he was injured as a result of the crash, Mr. Lucas stated the following with regards to his body position at the time of impact:

**Question by Alicia Murray:** Okay and um, you were injured at the scene of the accident?

General Motors North America
Field Performance Assessment

**Answer by Mr. Dean Lucas:** Yes ma'am. It like um, when I was leaving - I was driving with my arms on the steering wheel, like lean forward so when I grabbed the, held on to the wheel and got on the brakes, it was like already leaned up almost against the wheel. Thank God because I probably would have maybe slammed harder, I don't know. But my face hit the top of my steering wheel and my head hit on the top of it. Like head butted me you know. On the steering wheel. And um, I've had a surgery not long ago for my jaw so it broke my teeth. Um, my front teeth. It broke the, center of my teeth. But I went yesterday and to the dentist and he kinda fixed it up for now. That's why I'm talking a little funny if you can't.

**Question by Alicia Murray:** Okay.

**Answer by Mr. Dean Lucas:** You can hear like a little lisp.

**Question by Alicia Murray:** Okay. Were you taken from the scene by ambulance?

**Answer by Mr. Dean Lucas:** I did not go in the ambulance, no ma'am. Um, I, uh, I didn't see no need. I didn't think it was that bad at first so.

**Question by Alicia Murray:** Okay, so you sought medical treatment um the same day or the next day?

**Answer by Mr. Dean Lucas:** Actually I called to go yesterday and I cannot get an open, I want them to check my, my top of my head. I've had a cranium where they've removed my skull.

**Question by Alicia Murray:** Yes.

**Answer by Mr. Dean Lucas:** And these plates so it smashed that a little. I just want to make sure it didn't tear those screws, cause it got a pretty good knot on top of my head where it, kind of cut open a little bit um.

Mr. Lucas described being very close to the steering wheel at the time of the impact since he was anticipating a potential collision, "I . . . held on to the wheel and got on the brakes, it was like already leaned up almost against the wheel." In the position he described, Mr. Lucas would have been very close to the air bag, had it deployed in the subject crash, and would have been significantly more at risk of sustaining injuries from the inflating air bag.

Mr. Lucas was 40 years old and approximately 6'0" tall and 175 lbs at the time of the accident (from 10/29/2011 Rapides Regional Medical Center records). The police report indicated that he was not injured, and did not require transportation to a medical facility. As described previously in the "Reported Injuries" section of this report, Mr. Lucas visited Dr. Darron McCann four days after the crash with complaints of pressure pain in his front teeth and head pain. He noted to have a 2 cm knot on his forehead, and a 1 cm abrasion on his right upper lip. Eight days after the crash event, Mr. Lucas walked in to the Rapides Regional Medical Center with complaints of pain in his mouth, head, neck and back. CT scans of his face, cervical spine and thoracic spine were conducted, and all studies were unremarkable



General Motors North America
Field Performance Assessment

with no evidence of acute fracture, dislocation, or soft tissue abnormalities. He was diagnosed with cervical and thoracic strain. The CT scans did reveal evidence or pre-existing injury and post-surgical changes in the bilateral regions of the frontal skull and both maxillary regions, which were a result of a previous craniotomy.

Medical records from Rapides Regional Medical Center, Alexandria Neurosurgical Clinic, Avoyelles Open MRI, Dr. Darron McCann, and Dr. Jacob Gauthier all reference Mr. Lucas's extensive past medical history (occurring prior to the October 2011 subject crash) that includes reports of lower back pain beginning in June 2007, a previous motor vehicle accident in March of 2008, lower back surgery in August 2008 due to a compression fracture at L2 and lumbar disc protrusion at L5-S1, severe and constant headaches in August 2009 and June 2010. A more detailed chronology of his medical history includes:

6/11/2007 – **Rapides Regional Medical Center**

>   Complaint of low back pain when picking up (or riding?) a 4-wheeler on Saturday. No past medical history reported at this time. 6/11/07 L-Spine X-ray results - No fracture identified, alignment of lumber spine is good, disc space appearance is normal.

3/7/2008 - **Avoyelles Hospital Open MRI** *(previous motor vehicle accident 3/7/2008)*

>   CT Brain - slightly depressed acute fracture in the left frontal/supraorbital region with associated underlying subdural hematoma measuring 2 cm X 5 mm with a small amount of pneumocephalus in the area.
>
>   CT Cervical spine, Lumbar spine, Chest, Pelvis – normal C-spine, chest, and pelvis, mild acute compression fracture of L2, no CT evidence of traumatic injury to the solid intra-abdominal organs

3/17/2008 - **Dr. Jacob Gauthier, D.D.S.** *(after previous motor vehicle accident 3/7/2008)*

>   Dental Exam – Patient has history of an MVA, 'ejected from vehicle' trauma to forehead, broken nose, maxilla, broken ribs and vertebrae. Occl. Adj. made and smoothed fractured teeth #14 and 15. Recommended complete exam when swelling decreases

4/21/2008 – **Office visit to Alexandria Neurosurgical Clinic**

>   Consultation notes - MVA on 3/7/2008, treated at LSU Med Center and had bi-frontal craniotomy with fixation of frontal skull fractures and exoneration of frontal sinuses, repair of maxilla fractures. Also noted to have C-spine and L-spine (compression fx involving superior endplate w/ 25% reduction of vertebral body height) fractures that did not require surgery.



**GM** | General Motors North America Field Performance Assessment

7/16/2008 – **Office visit to Alexandria Neurosurgical Clinic**

Consultation notes - mild compression fracture of C6, compression fracture of L2, and disc protrusion L5-S1.

7/18/2008 - **Alexandria Neurosurgical Clinic**

MRI Cervical Spine – Mild disc bulge C4-C5, C5-C6 and C6-C7 with no significant cervical spine canal stenosis.  Compression fracture of L2 vertebra, disc protrusion at L5-S1, right lower extremity radiculopathy.

Made a recommendation for surgical discectomy at right L5-S1 vertebral segment due to right canal and foraminal protrusion and impingement at L5-S1 level, and he has had no successful improvement with convalescence and spinal injection.

8/1/2008 – **Office visit to Alexandria Neurosurgical Clinic**

Consultation notes – Upper extremity numbness when extends his hands, still reports severe back and right leg pain.

8/7/2008 – **Rapides Regional Medical Center**

Lumbar Discectomy Surgery (single day, outpatient surgery) due to displacement of lumbar intervertebral disc without myelopathy

8/9/2008 – **Rapides Regional Medical Center**

MRI Lumbar Spine MRI – Status post lumbar discectomy with progressive inflammatory type radiculopathy.  Right-sided surgical changes at L5-S1 disc level, with residual pericentral disc protrusion resulting in stenosis of right L5-S1 neural foramen.  Old compression deformity of L2 vertebral body with herniation of L1/L2 disc into the collapsed/compressed superior L2 end plate.

8/15/2009 - **Rapides Regional Medical Center**

Complaint of constant headache for 6 weeks.  Has past history of craniotomy.

CT of Brain – Post-op calvarial changes from history of prior surgery as well as facial bone changes.  Includes abnormality of frontal bone with abnormal configuration of the expected region of the frontal sinus and frontal bone, likely due to post-op changes.  Otherwise, no intracranial findings.

Diagnosis – sinusitis, headache





**General Motors North America**
**Field Performance Assessment**

6/14/2010 – **Rapides Regional Medical Center**

    Severe Headache in right frontal region (over right eye for 2 days), previous history of MVA with prior surgery.   Past history of neuro surgery, chronic, frequent headaches.

    CT of Brain – Post-op calvarial changes from history of prior surgery includes abnormality of frontal sinus and frontal bone region.  Otherwise, no evidence of acute calvarial fracture and no acute intracranial findings.

    Diagnosis – sinusitis, headache

8/2/2011 - **Alexandria Neurosurgical Clinic** *(Approximately three months before subject incident)*

    Clinic Report - interval worsening of neck and right upper extremity pain, extends to right hand. Still has back and LE pain but this is less severe.

10/25/2011 - **Dr. Darron McCann** *(after subject motor vehicle accident on 10/21/2011)*

    Office visit consultation notes - States belted, face hit steering wheel, head hit windshield, (+) bullseye on glass.  Broke teeth, knot on head.  Initially dazed but not bad, (+) nausea, (-) vomiting, head pain.  2 cm knot on head, oral 1 cm abrasion to right upper lip and frontal upper gums.

10/25/2011 - **Dr. Jacob Gauthier, D.D.S.** *(after subject motor vehicle accident on 10/21/2011)*

    A Statement of Services Rendered (with billing date listed as 10/25/2011) lists Dean Lucas had a Limited Oral Evaluation and Tooth 8 Crown Buildup.  The Dental Treatment history notes indicate Tooth 8 had work done on 10/24/2010, but no specific treatment is noted in October 2011.

10/29/2011 - **Rapides Regional Medical Center** *(after subject motor vehicle accident on 10/21/2011)*

    Complaints of motor vehicle accident, pain in mouth and head.  Arrived by "walk in" and complained of neck pain.  Noted lower C-spine or upper thoracic (pain), face/neck/back pain. Past history includes "previous injury to neck & face with surgery."

    Diagnosis = contusion and cervical/thoracic strain (maxillofacial CT showed no acute changes, c-spine and t-spine CTs were negative).

11/29/2011 - **Alexandria Neurosurgical Clinic** *(Approximately one month after subject incident)*

    Clinic Report – Seen for chronic neck and back pain and radiculopathies.  Patient was involved in MVA where he reportedly struck his head on windshield and fractured his tooth, was not evaluated in ER, later seen by primary care physician who ordered images but these were never completed. Recently, patient fell from approximately 14 feet while working at home and sustained bilateral upper extremity fractures of left wrist and right elbow (requiring surgery) and a fracture of a lumbar spine transverse process (not requiring surgery).



General Motors Corporation  • GM Technical Center  •  Mail Code 480-111-E20  •  30200 Mound Rd.  •  Warren, MI 48090



**General Motors North America**
**Field Performance Assessment**

Mr. Lucas had an extensive past medical history, but the injuries that appear to be directly attributable to the October 21, 2011, subject crash include a head contusion, an upper lip abrasion, cervical and thoracic strain, and unspecified damage to a crown on his #8 front tooth. I have been informed that the subject vehicle was repaired after the subject crash, so I did not have the opportunity to visually inspect the vehicle's interior in its post-collision condition for evidence of blunt impact or occupant contact marks.

Although a frontal air bag may be designed to reduce the risk of injury to the occupant due to contact with the vehicle's interior, a frontal air bag is not designed to deploy in lower speed accidents or higher speed accidents of long duration. Frontal air bag deployment decisions are based on how quickly the vehicle slows down during the crash event, in other words the change in longitudinal velocity over time. Air bags are not designed to deploy in some accidents of long duration, where occupants may be at risk of being out-of-position by the time the sensing system detects a crash and deploys the air bags, exposing that occupant to an increased risk of inflation induced injury. The frontal impact threshold for air bag deployment is specifically set at a level where the risk of exposing a potentially out-of-position occupant to an inflation induced injury is balanced against the benefits of providing supplemental protection against significant and life-threatening injuries. The Performance Assessment Committee (PAC) Report and GM's Occupant Evaluation Consideration Book document the considerations addressed in balancing the performance of the restraint system in the GMT911/912 heavy duty pick-up trucks. Mr. Lucas reports to have been leaning forward at the time of the crash, almost against the steering wheel, which would place his head and chest in close proximity to the driver air bag module at the time of the crash. In that type of situation, deployment of the driver air bag could have caused more significant injuries than those sustained by Mr. Lucas in the subject crash.

**CONCLUSIONS**

Based on a review of the information contained in the documents listed above, and based upon my research and engineering experience in designing airbag systems, evaluating occupant protection systems, and analyzing field performance, it is my opinion, based on a reasonable degree of scientific certainty, that:

- The subject vehicle, 2008 GMC Sierra 2500HD heavy duty crew cab pick-up truck, did not experience a sufficient level of longitudinal deceleration to result in an above threshold, deployment level frontal impact.

General Motors Corporation • GM Technical Center • Mail Code 480-111-E20 • 30200 Mound Rd. • Warren, MI 48090





- Mr. Lucas sustained minor injuries as a result of the crash event on October 21, 2011, which included a head contusion, an upper lip abrasion, cervical and thoracic strain, and unspecified damage to a crown on his #8 front tooth.

- Frontal air bags are not designed to deploy to mitigate the type of injuries Mr. Lucas sustained in this crash. The frontal air bags are designed to deploy during those crashes where the occupant is likely to be at risk of sustaining life-threatening head and chest injuries, or other similarly significant injuries.

- The injuries that Mr. Lucas sustained were not life-threatening, were a direct result of the crash circumstances, and were not caused because of a defect in the frontal air bag system.

- The severity of the injuries that Mr. Lucas sustained in this crash would likely not have been reduced if the driver's frontal air bag had deployed in the crash at issue and, due to his position close to the steering wheel at the time of the crash, may have been worse if the driver's frontal air bag had deployed.

- The development and design of the frontal air bag system in the 2008 GMC Sierra 2500HD heavy duty crew cab pick-up truck is reasonably safe and is not unreasonably dangerous.

In addition, I may offer historical information about the design and development of General Motors vehicles in general, and of the 2008 GMT900 heavy duty pick-up truck in particular. This type of information is described in the final report to the Performance Assessment Committee and the Occupant Evaluation Consideration Book.

**EXHIBITS**

At trial, I may use any of the materials that I identified as information that I reviewed as exhibits to help explain my opinions.

**COMPENSATION**

I am a salaried employee of General Motors LLC and receive no additional compensation for my work on this case.



General Motors Corporation • GM Technical Center • Mail Code 480-111-E20 • 30200 Mound Rd. • Warren, MI 48090


General Motors North America
Field Performance Assessment

**PRIOR TESTIMONY**

A list is attached of all other cases in which, during the previous four years, I testified as an expert at trial or by depositions.

My opinions are based on my education, my automotive industry experience as an occupant protection system development/design engineer and researcher for over 22 years, and my review of the general information outlined above.  I reserve the right to amend my opinions and supplement my report should additional information become available to me and/or plaintiffs produce expert reports.

*Kathryn F. Anderson*

Kathryn F. Anderson
Engineering Analysis
Global Vehicle Safety
General Motors



General Motors North America
Field Performance Assessment

LIST OF TRIAL TESTIMONY AND DEPOSITIONS IN PAST FOUR YEARS

Kathryn F. Anderson

Deposition – January 20, 2010;  Duckworth v. GM

Deposition – March 1, 2011;  Sherry v. GM Daewoo Auto & Technology

Deposition – November 18, 2011;  Sherry v. GM Daewoo Auto & Technology

Deposition – May 18, 2012; Granite State Ins. Co. and Federal Ins. Co. v. General Motors LLC

Deposition – August 16, 2013; Melton v. General Motors LLC



General Motors Corporation  •  GM Technical Center  •  Mail Code 480-111-E20  •  30200 Mound Rd.  •  Warren, MI 48090